PATRICK FUR FARM, INC., Plaintiff-Appellant,†

v.

UNITED VACCINES, INC. and Zurich American
Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 2004AP2851. Submitted on briefs April 4, 2005.
—Decided July 26, 2005.*

2005 WI App 190

(Also reported in 703 N.W.2d 707.)

† Petition for review denied 10-14-05.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Timothy S. Knurr* and *Chris G. Halverson* of *Schoone, Leuck, Kelley, Pitts & Knurr, S.C.* of Racine.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Robert L. McCollum, Michael D. Miller, Timothy J. Fetterly*, and *Cheryl Hood Langel* of *McCollum, Crowley, Moschet & Miller, Ltd.* of Minneapolis, MN.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J.    Patrick Fur Farm, Inc., appeals a summary judgment dismissing its claims

against United Vaccines, Inc., and its insurer, Zurich American Insurance Company. Patrick argues the circuit court erred by concluding its state law claims were preempted by federal law. We disagree and affirm the judgment.

## BACKGROUND

¶ 2. Patrick operates a large mink ranch in Rib Lake. In 1998, Patrick purchased BIOCOM-DP, a vaccine for its mink herd, from United Vaccines through its agent, Roger Brady. Patrick claims it purchased the vaccine based on Brady's representations that it was 95–98% effective against distemper.

¶ 3. United Vaccines is federally licensed to sell BIOCOM-DP. BIOCOM-DP is a four-in-one vaccine, meaning it protects against four diseases with one inoculation. The vaccine is sold in two parts, a liquid, BIOCOM-P, which protects against enteritis, botulism, and pseudomas; and a solid, Distemink, which protects against distemper. The vaccine is activated by dissolving the solid portion into the liquid. Patrick claims that in the 1998 batch of vaccine it received, the liquid portion deactivated the solid portion, rendering the distemper vaccine ineffective.

¶ 4. In October 1998, after vaccinating its mink herd with BIOCOM-DP, Patrick had a distemper outbreak that infected eighty percent of its herd and eventually killed about three percent. In the spring of 1999, the herd had an outbreak of toxoplasmosis, which Patrick also attributes to the failure of the vaccine. The toxoplasmosis outbreak killed over 10,000 kits. Patrick claims the vaccine's failure has produced additional damage, such as a reduced reproduction rate in the herd.

¶ 5. In March 2003, Patrick commenced this action. It alleged claims of intentional misrepresentation, strict responsibility misrepresentation, negligent misrepresentation, fraudulent misrepresentation and breach of express warranty based on Brady's claims that the vaccine was 95% effective. Patrick sought compensation for all damage caused by the distemper outbreak in its mink herd.

¶ 6. United Vaccines moved for summary judgment on all claims. The circuit court granted the motion on three bases. First, it concluded that all of Patrick's claims were preempted by federal law. Second, it concluded that Patrick's tort claims were barred by the economic loss doctrine. Finally, it concluded Patrick failed to produce sufficient evidence of reliance.

## STANDARD OF REVIEW

¶ 7. We review a summary judgment independently, using the same methodology as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). Summary judgment methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk,* 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751.

## DISCUSSION

¶ 8. Patrick argues that the circuit court erred by concluding that federal law preempts its state law

claims.[1] "A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citation omitted). We begin with the presumption that "Congress does not intend to supplant state law." *New York State Conf. of Blue Cross v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995). However, a federal "agency may determine that its authority is exclusive and preempt[] any state efforts to regulate in the forbidden area." *City of New York v. Federal Commun. Comm'n*, 486 U.S. 57, 64 (1988).

¶ 9.    The Viruses, Serums, Toxins, Antitoxins and Analogous Products Act, 21 U.S.C. §§ 151–159, prohibits the preparation, sale, barter or exchange of an animal vaccine that is "worthless, contaminated, dangerous, or harmful . . . ." *See* 21 U.S.C. § 151 (1999). The Act also delegates authority to regulate animal vaccines such as BIOCOM-DP. Regulatory authority of this vaccine ultimately rests with a federal agency, the Animal and Plant Health Inspection Service.

¶ 10.    Under its authority, the agency has promulgated an extensive regulatory scheme governing animal vaccines. *See* 9 C.F.R. §§ 101–23 (2005). It has also expressed its intent to preempt state law. "States are not free to impose requirements which are different from, or in addition to, those imposed by [the United States Department of Agriculture] regarding the safety,

---

[1] Patrick also appeals the circuit court's alternative bases for granting summary judgment, including that Patrick's claims were barred by the economic loss doctrine and were not supported by sufficient evidence of reliance. However, because we decide cases on the narrowest possible grounds, *see State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989), we only address Patrick's arguments regarding federal preemption.

efficacy, potency, or purity of a product." 57 Fed. Reg. 38758, 38759 (Aug. 27, 1992). More specifically, "where safety, efficacy, purity, and potency of biological products are concerned, it is the agency's intent to occupy the field." *Id.* at 38758–59.

¶ 11. Based on the agency's express statement of preemptive intent, United Vaccines contends, if Patrick's claims involve the safety, efficacy, potency or purity of BIOCOM-DP and seek to impose additional or different requirements, those claims are preempted. United Vaccines cites a number of cases that adopted this methodology, including *Cooper v. United Vaccines, Inc.*, 117 F. Supp. 2d 864 (E.D. Wis. 2000) and its predecessor, *Lynnbrook Farms v. Smithkline Beecham Corp.*, 79 F.3d 620 (7th Cir. 1996).

¶ 12. Patrick, on the other hand, contends our preemption analysis turns on whether Brady's representation is substantially similar to BIOCOM-DP's federally approved label. It urges us to adopt this reasoning from *Behrens v. United Vaccines, Inc.*, 189 F. Supp. 2d 945 (D. Minn. 2002). Like Patrick, the Behrenses brought misrepresentation and breach of warranty claims based on a salesperson's claims that BIOCOM-DP was 95% effective. The court concluded that claims based on representations made on the vaccine's federally approved label were preempted. *Id.* at 962. However, any off-label representation, such as a salesperson's claims of vaccine efficacy, was only preempted if the representation was substantially similar to the federally approved label. Because the salesperson's representations were not substantially similar to the label, claims based on those representations were not preempted. *Id.* at 965.

¶ 13. The *Behrens* court criticized the *Cooper* court for not addressing *Cipollone v. Liggett Group,*

*Inc.*, 505 U.S. 504 (1992). *Cipollone* held that claims premised on express warranties were not within the scope of the preemption clause of the Federal Cigarette Labeling and Advertising Act of 1965 or its successor, the Public Health Cigarette Smoking Act of 1969, and thus express warranty claims survived preemption. *Id.* at 525–27. In doing so, the *Cipollone* court relied on the precise and narrow express intent of Congress in passing the acts, which differ in scope from those of the Act here. *See id.* at 517–18. As the United States Supreme Court reiterated most recently in *Bates v. Dow Agrosciences LLC*, 125 S. Ct. 1788, 1800 (2005), we cannot ignore "obvious textual differences between . . . two pre-emption clauses." Here, in light of the agency's clear statement of preemptive intent and the scope of that preemption, *Behrens*'s reasoning is unpersuasive.[2]

¶ 14. The differences between preemption clauses also render Patrick's reliance on another case, *Gorton v. American Cyanamid Co.*, 194 Wis. 2d 203, 533 N.W.2d 746 (1995), misplaced. Gorton claimed negligent misrepresentation based on a herbicide manufacturer's false advertisement claims that its product was "safe and effective" and "without harm to subsequent crops." *Id.* at 222. Our supreme court held the claim was not preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). The court concluded that by enacting FIFRA, Congress had not "intended to occupy the *entire* field of pesticide regulation," because there

[2] Patrick also invokes the presumption against preemption to support its arguments that its claims are not preempted. However, the presumption "can be overcome by an agency's clear declaration of intent to preempt state law." *Lynnbrook Farms v. Smithkline Beecham Corp.*, 79 F.3d 620, 627 (7th Cir. 1996). Here, the agency's statement of preemptive intent rebuts the presumption.

was no statutory language or legislative intent to support that intention.[3] *Id.* at 218.

¶ 15. Here, however, the federal agency has made an express statement regarding its intended scope of preemption: "where safety, efficacy, purity, and potency of biological products are concerned, it is the agency's intent to occupy the field." 57 Fed. Reg. at 38758–59. Thus, we decline Patrick's invitation to adopt the reasoning of *Behrens*. Instead, we conclude that whether Patrick's claims are preempted by federal law turns on whether those claims involve the safety, efficacy, potency or purity of BIOCOM-DP. Because all of Patrick's claims stem from representations regarding the vaccine's efficacy, the claims are preempted.

*By the Court.*—Judgment affirmed.

---

[3] Patrick also cites *Kuiper v. American Cyanamid Co.,* 131 F.3d 656 (7th Cir. 1997). Because *Kuiper* involved the same herbicide and federal law as that considered in *Gorton v. American Cyanamid Co.,* 194 Wis. 2d 203, 533 N.W.2d 746 (1995), we similarly reject its reasoning.