In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-2805

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARTHUR MILES,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 19-cr-00183 — **Tanya Walton Pratt**, *Chief Judge.*

———————————

ARGUED SEPTEMBER 13, 2023 — DECIDED NOVEMBER 13, 2023

———————————

Before FLAUM, RIPPLE, and SCUDDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* Arthur Miles was sentenced to 240 months' imprisonment for four drug and firearm offenses. On appeal, he mounts several challenges to his convictions and sentence. For the following reasons, we vacate the district court's judgment with respect to Miles's multiplicitous firearm convictions and remand for the limited purpose of vacating one of his firearm sentences and merging his two firearm convictions. In all other respects, we affirm.

## I. Background

### A.  Factual Background

In 2019, Indianapolis-based law enforcement officers investigated Christopher Deeren for suspected drug trafficking. The officers used a confidential source (CS) to perform and surveil two controlled methamphetamine buys from Deeren. During both purchases, the CS met Deeren at a gas station, got into a car with him, and headed to 3243 Brouse Avenue. The CS handed Deeren cash, and Deeren entered the house alone. A few minutes later, Deeren returned to the car and handed the CS meth. The two drove back to the gas station, where the CS gave the meth to an undercover officer. Deeren used a different car for each controlled buy.

Based on this information, officers believed that Deeren's supplier was located at the Brouse Avenue address. They applied for a warrant to search that residence and any vehicles on its premises for evidence of drug trafficking. Then-Magistrate Judge Pryor approved the warrant.

A few days later, the CS arranged another controlled buy from Deeren so officers could execute the warrant. In advance, officers set up surveillance around the property. They observed a person, later identified as Arthur Miles, using a key to enter the residence. Soon after, Deeren and the CS arrived. Deeren exited the car and began speaking with Miles on the front porch of the residence. At that point, officers arrested both Miles and Deeren and executed the search warrant.

After Miles waived his *Miranda* rights, he admitted to living at 3243 Brouse Avenue and owning two vehicles on the premises. The cars that belonged to Miles—a Honda Odyssey

and a Dodge Charger—were different than those Deeren used during the controlled buys. The officers found 107.3 grams of pure meth inside the Honda. Inside the residence, they discovered an additional 160.5 grams of pure meth, 124 grams of a mixture containing cocaine, two rifles, and various drug distribution paraphernalia.

### B. Procedural Background

Miles was indicted for possession with intent to distribute meth (Count 1); possession with intent to distribute a mixture containing cocaine (Count 2); and knowing possession of two firearms in violation of 18 U.S.C. § 922(g)(1) (Counts 3 & 4). Miles made two motions to suppress the evidence recovered via the search, arguing that the warrant did not establish probable cause and was not sufficiently particular. The district court denied both motions.

A jury convicted Miles on all four counts, and the court entered concurrent sentences for each. Miles's meth conviction carried the longest sentence, and he received a within-the-Guidelines sentence of 240 months' imprisonment. Miles now appeals.

## II. Discussion

On appeal, Miles challenges his felon-in-possession convictions, the court's denials of his suppression motions, and the reasonableness of his sentence. We take each argument in turn.

### A. Section 922(g)(1) Convictions

Miles challenges his felon-in-possession convictions on two grounds. First, he argues that the convictions are multiplicitous. Second, he submits that they are unconstitutional

under *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

### 1. *Multiplicitous Convictions*

Miles argues, and the government concedes on appeal, that his two § 922(g)(1) convictions are multiplicitous because he possessed the two firearms underpinning his convictions simultaneously. *United States v. Haas*, 37 F.4th 1256, 1260 (7th Cir. 2022) ("An indictment is multiplicitous when it charges a single offense as separate counts."); *United States v. Buchmeier*, 255 F.3d 415, 422 (7th Cir. 2001) ("[W]hen a defendant's possession of multiple firearms is simultaneous and undifferentiated, the government may only charge … one violation of § 922(g)(1) … regardless of the actual quantity of firearms involved."). As such, this error requires remand so that "one conviction [can] be vacated and merged into the other." *United States v. Bloch*, 718 F.3d 638, 644 (7th Cir. 2013).

Miles argues full resentencing is necessary because his "invalid convictions played a significant role [in] the district court's sentencing considerations, to [his] prejudice." However, Miles does not provide support from case law or the factual record for this argument. These sorts of "perfunctory and underdeveloped arguments … unsupported by pertinent authority" are insufficient to maintain a claim on appeal. *Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 629 (7th Cir. 2022).

Even absent Miles's waiver, full resentencing is unnecessary. Although "we prefer to [remand for resentencing] to give the district court the opportunity to reconsider the sentence as a whole," *United States v. Mobley*, 833 F.3d 797, 801 (7th Cir. 2016) (citation omitted), a "more limited remand is

advisable when the district court's reasoning convinces us that the rest of the sentence would not change," *United States v. Teague*, 8 F.4th 611, 616 (7th Cir. 2021) (citation omitted).

Although the district court mentioned Miles's firearm possession at sentencing, it discussed the facts related to Miles's drug charges and his history with drugs extensively. Most importantly, while the court sentenced Miles to 60 months' imprisonment for each § 922(g)(1) conviction, those sentences have no effect on Miles's overall term of incarceration because they run concurrently with his lengthier 240-month meth sentence. As a result, plenary resentencing is unnecessary because "[b]ased on the court's findings[,] … we are persuaded that the rest of the sentences it imposed should be left intact." *Teague*, 8 F.4th at 616; *see also United States v. Parker*, 508 F.3d 434, 442 (7th Cir. 2007) (remanding with instructions to vacate one multiplicitous § 922(g) sentence and merge the two § 922(g) convictions but affirming the judgment of the district court "[i]n all other respects").

### 2. *Constitutionality of 922(g)(1)*

Miles next argues that both of his § 922(g)(1) convictions should be vacated because the statute violates the Second Amendment.

Last year, *Bruen* established a new framework for analyzing Second Amendment challenges to firearm restrictions, which relies solely on the Amendment's "text, as informed by history." 142 S. Ct. at 2127; *see also Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023) ("*Bruen* leaves no room for doubt: [T]ext and history … now define the controlling Second Amendment inquiry."). To start, if "the Second Amendment's plain text covers an individual's conduct, the Constitution

presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. To overcome this presumption, "[t]he government must then justify its regulation by demonstrating that the regulation is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

Before *Bruen*, this Circuit rejected challenges to § 922(g)(1)'s constitutionality. *See, e.g.*, *Kanter v. Barr*, 919 F.3d 437, 443, 450–51 (7th Cir. 2019), *abrogated by Bruen*, 142 S. Ct. 2111. However, "we did so under the means-end inquiry after determining that the historical record on felons possessing firearms was 'inconclusive.'" *Atkinson*, 70 F.4th at 1022 (quoting *Kanter*, 919 F.3d at 445–447).

*Bruen*, however, rendered the means-end analysis obsolete, 142 S. Ct. at 2126–30, and since *Bruen*'s pronouncement, challenges like Miles's have proliferated both in this Circuit and across the country. *See, e.g.*, *United States v. Prince*, No. 22 CR 240, 2023 WL 7220127 (N.D. Ill. Nov. 2, 2023); *United States v. Sims*, No. 22-cr-30081, 2023 WL 4461997 (C.D. Ill. July 11, 2023); *United States v. Freeman*, No. 23 CR 158, 2023 WL 3763745 (N.D. Ill. June 1, 2023); *United States v. Bullock*, No. 18-CR-165, 2023 WL 4232309 (S.D. Miss. June 28, 2023).

While three of our sister circuits have decided as-applied challenges to § 922(g)(1) in *Bruen*'s aftermath—two upholding the statute's validity—this Circuit has not.[1] *See Atkinson*,

---

[1] *Compare Vincent v. Garland*, 80 F.4th 1197, 1199–1202 (10th Cir. 2023) (upholding § 922(g)(1) against a nonviolent felon's post-*Bruen*, as-applied Second Amendment attack), *and United States v. Jackson*, 69 F.4th 495, 505–06 (8th Cir. 2023) ("[T]he Supreme Court's assurances … cast no doubt on the constitutionality of laws prohibiting [felon firearm possession], [so] we conclude that [§ 922(g)(1)] is constitutional as applied …."), *reh'g en banc denied*, 2023 WL 5605618, *with Range v. Att'y Gen.*, 69 F.4th 96, 106 (3d Cir.

70 F.4th at 1019–20 (remanding for "the historical analysis now required by *Bruen*" where district court dismissed a challenge to § 922(g)(1) before the Supreme Court announced *Bruen*).

Because Miles did not raise his constitutional challenge before the district court despite opportunities to do so, we review only for plain error. *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021); Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

To be plain, an error must be "clear and uncontroverted at the time of appeal." *United States v. Trudeau*, 812 F.3d 578, 589 (7th Cir. 2016). Since the Seventh Circuit has not yet ruled on § 922(g)(1)'s constitutionality after *Bruen*, the law is unsettled. *United States v. Hosseini*, 679 F.3d 544, 548 (7th Cir. 2012). As a result, "the claimed error—if there [is] one—[is] not plain." *Id.* at 552; *see also United States v. Hill*, No. 22-2400, 2023 WL 2810289, at *2 (7th Cir. Apr. 6, 2023) (citing *Hosseini* and holding that, because this Circuit has not resolved § 922(g)(1)'s constitutionality in *Bruen*'s aftermath, the district court could not plainly err in upholding § 922(g)(1)'s constitutionality).

That ends Miles's challenge. We remand to the district court with instruction to vacate one of Miles's § 922(g) sentences and to merge his two § 922(g)(1) convictions.

---

2023) (holding § 922(g)(1) unconstitutional as applied to a felon convicted of making a false statement to obtain food stamps when government did not show that "our Republic has a longstanding history and tradition of depriving [such] people … of their firearms").

**B. Search Warrant**

Miles next challenges the district court's denials of his suppression motions. We apply "a dual standard, assessing conclusions of law *de novo* and evaluating factual findings for clear error with special deference granted to the court's credibility determinations." *United States v. Bailon*, 60 F.4th 1032, 1036 (7th Cir. 2023) (citation omitted).

*1. Residence*

Miles first argues that the search warrant application did not establish probable cause to search the Brouse Avenue residence. The Fourth Amendment requires search warrants to be supported by probable cause. U.S. Const. amend. IV. As such, "a neutral magistrate must decide [whether] probable cause [exists] before the police conduct a search." *United States v. Taylor*, 63 F.4th 637, 648 (7th Cir. 2023). "We afford great deference to" that determination, "uphold[ing it] so long as there is a substantial basis for concluding that a search would uncover evidence of wrongdoing." *United States v. Yarber*, 915 F.3d 1103, 1105 (7th Cir. 2019) (citation and internal quotation marks omitted).

To satisfy probable cause, "a warrant application must contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place." *United States v. Roland*, 60 F.4th 1061, 1064 (7th Cir. 2023) (citation and internal quotation marks omitted).

Here, the warrant application relied on facts discovered through the two controlled buys between Deeren and the CS. Miles argues that these controlled buys did not establish probable cause because they did not sufficiently indicate that

drugs were coming from the residence. He stresses that the CS did not enter the house during the controlled buys, and Deeren was not searched before entering the house.

"[P]robable cause does not require direct evidence linking a crime to a particular place," though. *Yarber*, 915 F.3d at 1105 (citation omitted). Instead, probable cause "turn[s] on the assessment of probabilities in particular factual contexts." *Illinois v. Gates*, 462 U.S. 213, 232 (1983); *see also United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) ("Probable cause requires only a probability or substantial chance that evidence may be found ….").

The facts described in the search warrant application create a reasonable inference that Deeren obtained drugs from the house. In two separate controlled buys, Deeren gave the CS meth immediately after exiting the residence and returning to a vehicle. This "allow[s] for a reasonable inference that there is a fair probability that evidence" of drug trafficking would be found in the residence. *Roland*, 60 F.4th at 1064.

In similar circumstances, we have found probable cause to search a house for drugs. *See United States v. Scott*, 731 F.3d 659, 666 (7th Cir. 2013) (concluding probable cause supported a warrant to search a house when, during two controlled buys, seller left the CS at a gas station, drove to the house, and then returned to the gas station with drugs); *United States v. Orr*, 969 F.3d 732, 737 (7th Cir. 2020) (determining search warrant application established probable cause to search apartment "[e]ven though [the CS] did not report seeing crack cocaine in [defendant's]" residence). While it is "theoretically possible" that Deeren did not obtain the meth from Miles's house, it is not "so likely as to defeat probable cause, which after all requires only a probability—not absolute certainty."

*United States v. Fifer*, 863 F.3d 759, 765 (7th Cir. 2017) (citation and internal quotation marks omitted).

### 2. *Vehicles*

Miles further submits that the search warrant was overly broad because it extended to "any vehicles on [the] premises." The Fourth Amendment requires search warrants to "particularly describ[e] the place[s] to be searched." U.S. Const. amend IV. "This particularity requirement protects persons against the government's indiscriminate rummaging through their property," *Taylor*, 63 F.4th at 659 (citation omitted), and it "ensures that the scope of a search will be confined to evidence relating to a specific crime that is supported by probable cause," *United States v. Snyder*, 71 F.4th 555, 565 (7th Cir. 2023) (citation omitted).

Still, "[w]arrants may be issued even in the absence of direct evidence linking criminal objects to a particular site." *United States v. Orozco*, 576 F.3d 745, 749 (7th Cir. 2009) (citation omitted). As the search warrant application in this case explains, it is common for drug dealers to store proceeds from drug deals, such as cash, in their cars, and "a warrant application is entitled to take an officer's experience into account in determining whether probable cause exists." *Id.* Similarly, "issuing judges may draw reasonable inferences about where evidence is likely to be found based on the nature of the evidence and the offense." *United States v. Zamudio*, 909 F.3d 172, 175 (7th Cir. 2018).

Miles argues that the warrant should have been limited to vehicles connected to the Brouse Avenue residence or the observed drug trafficking activities. For support, he points to other cases involving more specific warrants. However, "[a]

warrant that may be overbroad in one context may be sufficiently specific [in a different context in which] the officers have less reliable information about where, exactly, the evidence is likely to be found." *United States v. Vizcarra-Millan*, 15 F.4th 473, 502 (7th Cir. 2021).

The key question is whether the information contained within the warrant application "allow[ed] for a reasonable inference that there [was] a fair probability that evidence [of drug trafficking] w[ould] be found in" any car on the premises of the Brouse Avenue residence. *Roland*, 60 F.4th at 1064. "[N]either an absolute certainty nor even a preponderance of the evidence is necessary." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010).

Prior to obtaining the warrant, officers were unable to determine who lived at the Brouse Avenue residence or anticipate which vehicles would be on the premises during the warrant's execution. Nevertheless, they had observed Deeren using different vehicles to travel to and from the residence on two occasions. During both controlled buys, Deeren gave the CS meth while the two sat inside a vehicle at the Brouse Avenue residence. While Miles maintains that Deeren's use of those vehicles did not justify such a broad search, given the flexible probable cause standard and our deferential level of review on appeal, the warrant passes muster.

Two factors underpin that conclusion. First, warrants are constitutional when they are as "specific [as the officers'] knowledge allows." *United States v. Bishop*, 910 F.3d 335, 338 (7th Cir. 2018). If officers knew which vehicles were associated with the drug-dealing activities, "failure to identify [them] in the warrant would have violated the constitutional particularity requirement." *Id.* at 337–38 (holding warrant

permitting search of all files on cell phone was supported by probable where officers "did not know where on his phone [the defendant] kept his drug ledgers and gun videos"). Indeed, officers could not have described the vehicles with more particularity because they were unable to identify the residence's owner and observed Deeran using different vehicles to facilitate the two controlled buys. Thus, the warrant was as "specific [as the officers'] knowledge allow[ed]" under the circumstances, *id.* at 338, and it did not "allow officers to search for items that [were] unlikely to yield evidence of the crime," *Vizcarra-Millan*, 15 F.4th at 502. *See also Bishop*, 910 F.3d at 337 ("A warrant may be thought 'too general' only if some more-specific alternative would have done better at protecting privacy while still permitting legitimate investigation." (internal citation omitted)).

Second, because Deeren handed the CS meth immediately after exiting the house in both controlled buys, the officers reasonably believed that the residence's owner was Deeren's meth source. On these facts, it is reasonable to infer that there was a fair probability that evidence of drug trafficking would be found in any car on the Brouse Avenue residence. *See United States v. Evans*, 92 F.3d 540, 543–44 (7th Cir. 1996) (permitting the police to search any car parked in a garage "unless it is apparent that the [car] does not belong to anyone connected with the illegal activity—a condition that will rarely be satisfied" even when the officers know the identity a of home's owner). Accordingly, the warrant did not violate the Fourth Amendment.

### C.  Sentence

Last, Miles challenges his sentence, arguing that it is substantively unreasonable because it is "greater than necessary"

under 18 U.S.C. § 3553(a) given his physical and mental health issues.[2]

We review the substantive reasonableness of a district court's sentencing decision for abuse of discretion. *United States v. Griffith*, 913 F.3d 683, 689 (7th Cir. 2019). Under this deferential standard, "[w]e do not ask what sentence we would impose; we ask whether the district judge imposed a sentence for logical reasons that are consistent with the … § 3553(a) factors." *United States v. Campbell*, 37 F.4th 1345, 1352 (7th Cir. 2022). Importantly, if the court-imposed sentence falls within the Guidelines-range, we presume it is reasonable. *United States v. Major*, 33 F.4th 370, 379 (7th Cir. 2022).

Here, the court sentenced Miles to 240 months' imprisonment, which was on the low-end of the Guidelines range of 235 to 293 months' imprisonment. The sentence is thus presumptively reasonable, *id.*, so Miles "bears the burden of rebutting that presumption by demonstrating that the sentence is unreasonably high in light of the [§] 3553(a) factors," *Griffith*, 913 F.3d at 689. He attempts to do so by arguing that, contrary to § 3553(a)(2)(D), his sentence prevents him from receiving necessary medical care in the most effective manner.

No one disputes that Miles, who was forty-eight years old at the time of his sentencing, faces serious health problems: His kidneys are failing, so he requires dialysis three times a week and takes five different prescription medications. Miles

---

[2] Miles also challenges the procedural reasonableness of his sentence, but, as explained above, the appropriate remedy for his multiplicitous § 922(g)(1) convictions is a limited remand to vacate one sentence and merge the two convictions.

also takes medication for high blood pressure, and he has undergone separate surgeries on his knee and to remove his thyroid. In addition, Miles has an IQ of 72.

The district court addressed these concerns in its careful explanation of its sentence. To start, the court listed Miles's "very poor" health as a mitigating factor in declining to impose the government's proposed thirty-year term of imprisonment. Nevertheless, the court explained that Miles's "very serious health problems … have not impacted his criminality." As the court noted, "despite the fact that [Miles] was on dialysis" and while under pretrial supervision for this case, "he was arrested for distributing methamphetamine." The court concluded by stating:

> Mr. Miles has made very unfortunate decisions that have landed him in a very difficult position where he's going to lose his freedom and be separated from his family while a very sick man. The evidence seized during the search depict[s] an armed drug trafficker, and Congress imposes serious penalties for his crimes.

As such, the court considered Miles's medical needs as required by § 3553(a)(2)(D).

"At sentencing, district judges have discretion over how much weight to give a particular [§ 3553(a)] factor. Although the weighting must fall within the bounds of reason, those bounds are wide." *Campbell*, 37 F.4th at 1353 (citation and internal quotation marks omitted); *see also United States v. Hendrix*, 74 F.4th 859, 872 (7th Cir. 2023) ("We decline to second-guess the district court's weighing of the information at its disposal, a task committed to its sound discretion.").

Due to the seriousness of the crimes at issue and Miles's lengthy criminal history, the court's evaluation of the § 3553(a) factors fell within the bounds of reasonableness. Moreover, Miles's health issues did not deter his criminal activity. *See United States v. Elmer*, 980 F.3d 1171, 1177–78 (7th Cir. 2020) (rejecting substantive reasonableness challenge to sentence at "the low end of the advisory range" where district court considered defendant's health conditions as a mitigating factor); *United States v. Rothbard*, 851 F.3d 699, 701–03 (7th Cir. 2017) (affirming custodial sentence for defendant who had been diagnosed with leukemia prior to committing the operative offense because the district court sufficiently considered defendant's diagnosis and imposed a within-the-Guidelines sentence). At bottom, Miles has not rebutted the presumptive reasonableness of his sentence. As a result, we conclude the district court did not abuse its discretion in fashioning Miles's sentence.

### III. Conclusion

For the foregoing reasons, we VACATE the district court's judgment with respect to Miles's § 922(g)(1) convictions and REMAND with limited instructions to vacate one of Miles's § 922(g)(1) sentences and merge his multiplicitous § 922(g)(1) convictions. We AFFIRM the district court's judgment in all other respects.