COURT OF APPEALS
DECISION
DATED AND FILED

November 25, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2245-CR**

Cir. Ct. No. 2021CF4123

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

ANTHONY W. SMITH,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: PAUL R. VAN GRUNSVEN, Judge. *Reversed and cause remanded for further proceedings.*

Before White, C.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State of Wisconsin appeals from an order suppressing evidence from a search of one of Anthony W. Smith's vehicles, an Acura ZDX. The search warrant authorized the search of Smith's apartment, his Honda Crosstour, and "vehicles associated with and accessible" to his apartment. Smith moved to suppress evidence from the Acura because it was not individually described, arguing the warrant was overbroad. The circuit court granted Smith's motion to suppress, then granted the State's motion for reconsideration, and then granted Smith's motion for reconsideration, thereby reinstating the original order suppressing evidence from the Acura. On appeal, the State argues that (1) the search of the Acura was covered by the warrant, (2) the good faith exception applies, or (3) a warrantless search was allowed by the automobile exception. We conclude that search of the Acura was not an unauthorized "general search," but fell within "the specific areas and things for which there is probable cause to search[.]" *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Therefore, we reverse the suppression order and remand for further proceedings consistent with this decision.

## BACKGROUND

¶2 This case arises from a police investigation into Smith for drug trafficking. In September 2021, the police applied for a warrant to search Smith's apartment in St. Francis and his Honda Crosstour, identified by license plate and Vehicle Identification Number (VIN), with the "search to include all storage areas and vehicles associated with and accessible to" Smith's apartment.

¶3 In the warrant application affidavit, Robert Gregory, a Milwaukee Police Department (MPD) officer assigned to the North Central High Intensity Drug Trafficking Area and attached to the Milwaukee Metropolitan Drug

Enforcement Group, attested that, based on his experience and training, certain facts established probable cause to believe drug trafficking crimes were being committed by Smith. The officer attested that he observed a woman carrying currency enter Smith's Honda, which he was operating, and leave the car minutes later with a small clear plastic bag. Later, a trained police dog alerted for controlled substances outside of Smith's Honda. The officer further observed Smith appearing to conduct four additional drug transactions with people entering and exiting his vehicle. Smith also appeared to carry a firearm on his person.

¶4     Officer Gregory further averred that he had five years of experience as a police officer conducting surveillance operations relating to controlled substance trafficking, including "mobile vehicle transactions." The officer attested that based upon the surveillance of Smith, he believed that Smith was "trafficking controlled substances from his vehicle." Officer Gregory averred that in his training and experience, controlled substances and firearms can be secreted in "vehicles on and associated with the premises," as well as in the residence, storage areas, garages, and attics. The search warrant application, which was reviewed and approved by an attorney in the Milwaukee County District Attorney's Office, was granted by a Milwaukee County Circuit Court Commissioner on September 24, 2021.

¶5     The police executed the search warrant on September 27, 2021. In the search of the kitchen of Smith's apartment, the police found 88 blue pills, which field tested positive for fentanyl; digital scales with cocaine residue; mail addressed to Smith; and a Wisconsin vehicle registration for a silver Acura ZDX in Smith's name. In a bedroom, the police found more than $16,000 in currency, a 9mm semi-automatic handgun with a 50-round magazine, an AR-15 semi-automatic handgun, a handgun box containing paperwork signed by Smith, and

cell phones. Based on the identifying information recovered, it appeared Smith was the only adult to occupy the residence.

¶6 Within the search of the apartment, the police found keys to the Honda and the Acura, which were both registered in Smith's name. In the Honda, police found a Wisconsin Correctional letter and state identification card for Smith, and a 9mm magazine that fit one of the guns found in the bedroom. In the Acura, the police found 23 corner cuts containing a tan substance, which field tested positive for heroin and fentanyl, in the amount of 7.47 grams; a plastic bag containing a white chunky substance, which field tested positive for cocaine, in the amount of 6.88 grams; a 9mm semi-automatic handgun; mail addressed to Smith; and Smith's wallet.

¶7 Smith was charged with possession with intent to deliver cocaine, between 5 and 15 grams, with use of a dangerous weapon; possession with intent to deliver narcotics, with use of a dangerous weapon; and possession with intent to deliver heroin, between 3 and 10 grams, with use of a dangerous weapon.

¶8 Smith moved to suppress the evidence, arguing that the warrant stated insufficient probable cause to search Smith's apartment because the police surveillance observed him in the Honda and the police never witnessed a crime, much less a crime connected to the apartment. He also asserted that the search of the Acura was warrantless because the police did not add the Acura to the warrant, the vehicle was parked in the apartment complex's parking lot among many vehicles, and no police surveillance linked this vehicle to a crime.

¶9      After the circuit court addressed and denied suppression of the evidence found in the apartment and Honda, the court conducted an evidentiary hearing on the search of the Acura.[1]  The State argued that the Acura was covered by the language in the warrant for all "vehicles associated with and accessible to" Smith's apartment.[2]   It contended that after the warrant was issued on September 24, but before the warrant was executed on September 27, the police learned Smith was the registered owner of the Acura.  The police only proceeded to search the Acura after they found the registration and the keys in the apartment.

¶10     Smith argued that the police needed to have a warrant to search the Acura and that they failed to add this vehicle to the existing warrant or apply for a new warrant.

¶11     The State called Officer Gregory, the affiant in the search warrant application.   The officer testified that he had been part of 200-300 warrant executions and the affiant of over 100 affidavits for search warrants.  He stated that the language for "vehicles associated with and accessible to" the address or target residence was commonly included in drug trafficking warrant applications, because in his experience investigating mobile drug trafficking, those dealers utilized multiple vehicles for a variety of reasons.  He testified that Smith had been observed dealing only from the Honda, but the police suspected it was possible he had multiple vehicles.

---

[1] The Honorable Carolina Stark ruled on the suppression of evidence related to the apartment and Honda.  The Honorable Paul Van Grunsven ruled on the suppression of the evidence from the Acura and the remaining issues in this case.  We refer to either judge as the circuit court.

[2] The State also argued that the good faith exception would apply, because the police reasonably believed they were searching the Acura under the terms of the warrant.

¶12    Officer Gregory testified that, in surveillance before the warrant execution, the police observed that Smith's Honda had a flat tire, and then ran the license plates on the silver Acura parked next to the Honda through Department of Transportation (DOT) records. DOT records showed the Acura was registered to Smith as well. He stated they did not seek a separate warrant for the Acura because it was parked next to the vehicle named in the warrant, the registration and keys were in the apartment, and the search of the apartment showed only Smith lived there.[3] He stated the police concluded that the Acura was directly associated with and accessible to Smith's apartment, as well as being owned by Smith.

¶13    The circuit court suppressed the evidence from the Acura on the basis that the State had not shown that the Acura was associated with Smith's apartment, which was fatal to the analysis and meant the search exceeded the scope of the warrant. The court stated that after seeing the Acura, the police should have gotten a warrant prior to any search. The court concluded that the officer only testified that the vehicle belonged to Smith, not that the vehicle was associated with Smith's apartment.

¶14    The State moved the circuit court to reconsider, arguing that a review of the evidentiary hearing testimony would change the court's decision.[4] At the hearing, Smith's attorney conceded that after reviewing the transcript, the

---

[3] Upon cross-examination and viewing photographs of the scene, Officer Gregory amended his description to state that the Acura was in close vicinity to the Honda, not in the next parking space.

[4] Alternatively, the State asserted that the good faith exception to the exclusionary rule would apply or that the Acura was lawfully searched under the automobile exception for warrantless searches.

court likely misheard Officer Gregory's testimony associating the Acura with Smith's apartment and if the court had heard it correctly, it would not have suppressed the evidence. The court stated that having reviewed the hearing transcript, it did mishear the evidence and therefore the basis for granting suppression was not legally and factually sound. The court vacated its prior order and denied Smith's motion to suppress evidence from the Acura.

¶15 By new counsel, Smith moved the court to reconsider the denial of the motion to suppress. Smith argued that the circuit court erred when it granted the State's motion to reconsider because the search of the Acura failed to satisfy the particularity requirement of the Fourth Amendment and the language was overbroad and ambiguous. He also asserted that Smith's prior attorney's concession was contrary to Smith's interests.

¶16 At the reconsideration hearing, the circuit court concluded that it was right initially, it was shocked that Smith's attorney conceded, and it suppressed the evidence from the Acura. The court concluded that the good faith exception did not apply, because the police had the Acura under their control and "easily could have gotten a second warrant" before searching it.

¶17 The State now appeals.

7

**DISCUSSION**

¶18    The State argues that the evidence from the Acura should not be excluded and the circuit court erred when it granted the motion to suppress.[5] Smith argues that the Fourth Amendment's particularity requirement was violated when the search warrant authorized the search of general or non-specific vehicles; therefore, the circuit court's decision to suppress evidence from the Acura was reasonable.

¶19    We review an order to suppress evidence using a two-step process. *State v. Pender*, 2008 WI App 47, ¶8, 308 Wis. 2d 428, 748 N.W.2d 471. "First, we uphold the circuit court's findings of historical fact unless clearly erroneous." *Id.* Second, "'[t]he question of whether police conduct violated the constitutional guarantee against unreasonable searches and seizures is a question of constitutional fact' that we review independently." *State v. Sveum*, 2010 WI 92, ¶16, 328 Wis. 2d 369, 787 N.W.2d 317 (citation omitted).

¶20    "Both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect against unreasonable searches and seizures." *State v. Eason*, 2001 WI 98, ¶16, 245 Wis. 2d 206, 629

---

[5] Additionally, the State renews its alternative arguments that if the warrant was invalid to search the Acura, the automobile or good faith exception would apply. Because we conclude that the search warrant was valid and the search was reasonable, we do not address the State's alternative theories. Further, we decline to address any arguments about reconsideration standards because the order appealed was the order to suppress the evidence from the search of the Acura, not the reconsideration motions. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (explaining that "cases should be decided on the narrowest possible ground").

N.W.2d 625.[6] "Whether a search was reasonable depends on the particular circumstances of the case and requires a balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Sveum*, 328 Wis. 2d 369, ¶54 (citation and one set of quotation marks omitted).

¶21    For a search to be constitutionally valid, the warrant must be issued validly and executed reasonably. *Id.*, ¶19. A valid search warrant is issued only upon a finding of probable cause by a neutral and detached magistrate. *State v. Higginbotham*, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991). A valid search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." *State v. Noll*, 116 Wis. 2d 443, 450, 343 N.W.2d 391 (1984) (quoting U.S. CONST., amend IV). The reasonable execution of a search warrant requires that the search "be conducted reasonably and appropriately limited to the scope permitted by the warrant." *Sveum*, 328 Wis. 2d 369, ¶53 (citation and two sets of quotation marks omitted).

¶22    The issue in this appeal is whether the warrant was sufficiently particular to satisfy the Fourth Amendment.[7]  "The manifest purpose of this

---

[6] Wisconsin courts look to "federal cases interpreting the Fourth Amendment and the federal exclusionary rule to interpret [Wisconsin Constitution] Article I, Section 11, and Wisconsin's exclusionary rule." *State v. Eason*, 2001 WI 98, ¶42, 245 Wis. 2d 206, 629 N.W.2d 625. For the issues in this appeal, no party has asserted a reliance on Wisconsin constitutional protections in place of federal ones, and we rely upon guidance from both federal and Wisconsin cases.

[7] We note that Smith's original motion asked the court to suppress evidence from all searched locations; however, the circuit court determined that no evidence from the apartment and the Honda needed to be excluded, leaving the evidence from the search of the Acura for later proceedings. This initial suppression ruling was not further contested before the circuit court and is not raised on appeal. Accordingly, we do not interpret Smith to contest the first two factors in a valid warrant—neutrality of the magistrate and the determination of probable cause—and instead confine our analysis to particularity.

particularity requirement was to prevent general searches." ***Garrison***, 480 U.S. at 84. "In order to satisfy the particularity requirement, the warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." ***Noll***, 116 Wis. 2d at 450-51. "The use of a generic term or general description is constitutionally acceptable only when a more specific description of the items to be seized is not available." ***Id.*** However, "[t]he particularity requirement of the Fourth Amendment is to be applied with a practical measure of flexibility and only requires reasonable specificity." ***United States v. Shoffner***, 826 F.2d 619, 631 (7th Cir. 1987).

¶23 We begin with whether the language in the warrant was so generic or generalized that it would authorize a prohibited general search. *See **Sveum***, 328 Wis. 2d 369, ¶28. The warrant described parts of the premises very specifically— referring to Smith's apartment by address and building description, and Smith's Honda by model, license plate, and VIN. However, it also included within the premises to be searched "all storage areas and vehicles associated with and accessible to Smith's apartment." These descriptions are more generic, but "a warrant need not be more specific than knowledge allows." ***United States v. Bishop***, 910 F.3d 335, 338 (7th Cir. 2018).

¶24 While the affidavit detailed multiple drug transactions involving the Honda, the Acura was unknown at the time of search warrant application. "If officers knew which vehicles were associated with the drug-dealing activities, 'failure to identify [them] in the warrant would have violated the constitutional particularity requirement.'" ***United States v. Miles***, 86 F.4th 734, 743 (7th Cir. 2023) (quoting ***Bishop***, 910 F.3d at 337-38). Here, Officer Gregory did not have more specific information on any other vehicles Smith used, but instead attested that he had knowledge and experience surveilling mobile drug traffickers; that in

his experience, drug dealers commonly secret drugs in their vehicles; and that he believed Smith was "trafficking controlled substances from his vehicle." Based on the information presented to the neutral magistrate, it was reasonable to find probable cause to authorize the search of a limited subset of other vehicles that could be connected to Smith through his apartment.

¶25 Our examination of the record shows that the circuit court was primarily concerned that the police had not added the Acura to the existing warrant or sought a second warrant for it during or after the execution of the existing warrant.[8] We might agree with the court if the police had specific knowledge of the Acura being used in mobile drug dealing prior to applying for the search warrant. Instead, the Acura fell within the subset of vehicles associated with and accessible to Smith's apartment. It was only after police observed the Acura parked in Smith's apartment complex's parking lot, reviewed DOT records showing the Acura registered to Smith, and found the registration documentation and keys inside Smith's apartment, that the police conducted the search. We conclude there was no constitutional requirement to seek another or an amended warrant.

¶26 We conclude that the warrant's authorization to search "vehicles associated with and accessible to" Smith's apartment identified the places to be searched to a reasonable degree of specificity based on the knowledge at the time of the warrant application. *See Noll*, 116 Wis. 2d at 450-51. Generalized

---

[8] Our examination of the transcripts from the suppression and reconsideration hearings shows that the circuit court's initial finding that Officer Gregory's testimony only tied the Acura to Smith, but did not associate it with his apartment, was clearly erroneous, and the first reconsideration of that issue was reasonable. Although it may be curious for Smith's first attorney to concede the suppression issue, the attorney's performance is not before us.

descriptions such as storage areas, attics, garages, and vehicles are considered acceptable under the Fourth Amendment when the descriptions are based on the information known about the places to be searched (and objects to be seized) and provide reasonable guidance to identify the scope of the permitted search. *See id.* at 451.[9] We conclude that the warrant was not facially defective or invalid. *Cf. Groh v. Ramirez*, 540 U.S. 551, 554, 557 (2004) (concluding a warrant was invalid when it described the person or property to be seized as the target's house, rather than describing a stockpile of weapons or incorporating the more detailed description in the affidavit).

¶27　Finally, we conclude that the search warrant was reasonably executed with regard to the Acura. *See Sveum*, 328 Wis. 2d 369, ¶53 (requiring warrant execution to be conducted reasonably and limited to the scope provided in the warrant). Officer Gregory testified that after the warrant was issued, but before the warrant was executed, the police observed the Acura in the parking lot near Smith's Honda, ran the plates, and found it was registered to Smith. During the search of the apartment, the police found the registration documentation and keys to the Acura. Only then did the police proceed to search the Acura, resulting in them finding heroin, cocaine, and a 9mm handgun. We conclude that the search

---

[9] The determination of particularity depends on the facts known about the places or objects. For example, our supreme court concluded that the portion of a search warrant that authorized the seizure of "various long-play phonograph record albums, and miscellaneous vases and glassware items," was constitutionally defective because "[a] more particular description of those items could have been provided" because the police were searching for a list of specific items stolen from an auction. *State v. Noll*, 116 Wis. 2d 443, 451, 343 N.W.2d 391 (1984). In contrast, our supreme court upheld a search of a suspect's vehicle, which was not specifically described in the warrant, because the court concluded the vehicle, parked next to an outbuilding 200 feet from the suspect's house was in the curtilage of the premises described in the warrant. *State v. O'Brien*, 223 Wis. 2d 303, 316, 588 N.W.2d 8 (1999).

warrant was constitutionally valid and the search was constitutionally executed. Therefore, we reverse the order suppressing evidence from the Acura.

## CONCLUSION

¶28    We conclude that the Acura was searched in accordance with a valid warrant. We reverse the order suppressing evidence from the Acura and remand for further proceedings consistent with this decision.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2023-24).